IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

TRAVELERS PROPERTY CASUALTY )
COMPANY OF AMERICA, INC )
)
    **Plaintiff,** )
) **Docket No.:**
v. ) **Judge**_____
) **Magistrate Judge** _____
U.S. HOSPITALITY PUBLISHERS, INC. )
and U.S. HOSPITALITY PUBLISHERS, )
INC. d/b/a UNIGUEST )
)
    **Defendant.** )
)
)

## COMPLAINT

COMES NOW the Plaintiff, Travelers Property Casualty Company of America, Inc. ("Travelers") by and through its counsel, and states:

### INTRODUCTION

1. This action for declaratory relief is filed to settle important questions of insurance coverage under two policies of insurance issued in Tennessee by Travelers to Defendants U.S. Hospitality Publishers, Inc. and U.S. Hospitality Publishers, Inc. d/b/a Uniguest, collectively referred to hereinafter as Uniguest.

2. Uniguest demands insurance coverage for losses it claims to have sustained.

3. Uniguest makes demand pursuant to two policies of insurance it has with Travelers a commercial general liability policy and an excess insurance policy.

4. Travelers avers that there is no coverage under the policies for the claims made by Uniguest.

1

5. A dispute exists between the parties.

6. Travelers brings this lawsuit in order to obtain a declaration as to the parties' respective rights and obligations under the insurance policies.

## THE PARTIES

7. Travelers is a Connecticut insurance company with its principal place of business in Hartford, Connecticut.

8. Uniguest is a Tennessee corporation with a principal place of business in Nashville, Tennessee.

## JURISDICTION AND VENUE

9. This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201 regarding the scope and extent of insurance coverage under the two insurance policies issued by Travelers to Uniguest.

11. This Court has personal jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the insurance policies involved in this lawsuit were issued by Travelers to Uniguest, a Tennessee corporation, at an address located in this judicial district.

## INSURANCE POLICIES

13. Travelers issued a Commercial General Liability policy, ZLP-15T35472-16-15, to Uniguest with a policy period of March 31, 2016 to March 31, 2017. ("CGL Policy").

2

Case 3:17-cv-01123   Document 1   Filed 08/07/17   Page 2 of 9 PageID #: 2

14. A certified copy of the CGL Policy is attached as Exhibit 1 to this complaint.

15. Travelers also issued a Commercial Excess Liability (Umbrella) policy, ZUP-61M54320-16-15, to Uniguest with a policy period of March 31 2016 to March 31, 2017. ("Excess Policy").

16. A certified copy of the Excess Policy is attached as Exhibit 2 to the complaint.

## FACTUAL BACKGROUND

17. Uniguest provides a managed service for hotel business centers or kiosks. The service allows for the private use of computers by individuals at hotels or conferencing centers.

18. The claims for coverage by Uniguest under the CGL and Excess Policies arise from a software push by Uniguest to upgrade the system it offered to its clients.

19. The first way in which Uniguest attempted to upgrade its systems was to upgrade client kiosks to the Microsoft Windows 10 Operating System ("Windows 10"). The then-existing Uniguest kiosk platform was not prepared to be utilized within the Windows 10 environment and several of Uniguest's clients received notifications of an upgrade to Windows 10 on their kiosks. Uniguest wanted to provide an upgrade of their managed service capable to operate on Windows 10 and utilize the ability to obtain a free Windows 10 upgrade.

20. A second way in which Uniguest attempted to upgrade its systems was to provide a broader package update of the Uniguest software application. The Uniguest kiosk product was based on a platform identified as "SiteKiosk." The SiteKiosk product is a software package by Provisio that implements various levels of security for publicly accessed computers. Uniguest embedded this security within their kiosk product for added security and it was the base of their Uniguest software application. With the desire to move to the Windows 10 OS, Uniguest was

3

required to build a new product application as the existing Uniguest product was not compatible with Windows 10. Uniguest based its new product application on a product called "DeepFreeze."

21. The Uniguest upgrades were done within the time frame that the Microsoft Windows 10 free upgrade was available. The process did not work as expected. As a result, a number of the kiosks were not responsive to remote support. Because a large majority of the kiosk computers were not responsive to the remote management application, Uniguest was unable to remotely administer recovery from the upgrade. As a consequence, recovery had to be performed by an on-site administrative user of the kiosk.

22. It was discovered that the new software application developed by Uniguest had capability issues with existing computers that were operating the Uniguest product. Because of this issue, Windows 10 and the Uniguest software application would not complete the upgrade process properly. As a result, the operation of most kiosk computers was inhibited, depriving Uniguest's clients the ability to offer business center services to their customers.

23. Upon information and belief, following some of the failed upgrades, various clients requested support to recover their systems. The calls were primarily grouped into three (3) different categories:

> (i) Certain newer systems were accessed remotely. Many of the newer kiosks could still be administered by Uniguest using their remote support tools. The process for these systems was to recover them to the latest version of Uniguest that was known to be supported. Recovery did not require an on-site presence to physically administer the rollback to a

4

stable Uniguest version. Remote access was accomplished in this manner for approximately 2,900 business centers.

(ii) The second remediation category involved having a technician physically go to the client site and provide the required repair of the software for the computer kiosk. This involved restoring the client to the latest stable version of the Uniguest product that was supported. The effort was accomplished by the technician having administrative privileges for the computer kiosk and either loading the application via a universal serial bus ("USB") drive or installing a preloaded hard disk drive ("HDD") into the computer and rollback to the latest version of the Uniguest product that was known to be supported. This process was completed for a total of 10,249 business centers.

(iii) Finally, it was discovered that additional systems could also not operate on the latest known stable Uniguest version. A total of 382 business centers contained aged or older systems that failed the upgrade process to the Windows 10 product that Uniguest was attempting to utilize. Following this failure, it was discovered that these kiosk systems were not originally running the latest version of Uniguest. Because of this, they could not be rolled back to currently supported and stable versions. The Uniguest application running on

5

these aged systems was no longer maintained. Uniguest made the decision to remediate this issue by replacing the aged kiosk systems with new hardware. The replacement of the aged kiosks was not the result of the failed update. Instead, the purpose of the replacements was due to the prior hardware being unable to run the latest version of Uniguest software because it was not able to run the latest version of the Uniguest software prior to the update.

24. The foregoing client requests are hereinafter referred to as the "Client Claims."

25. The CGL Policy contains the following language :

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

\* \* \*

26. The CGL Policy does not provide insurance coverage under Coverage A for the claims made by Uniguest.

27. The Client Claims do not seek damages to Uniguest because of "bodily injury".

28. The Client Claims do not seek damages because of "property damage," defined in the CGL Policy as physical injury to tangible property or loss of use of tangible property that is not physically injured.

6

29. Further, to the extent the Client Claims did seek damages because of "property damage," the Client Claims are excluded from coverage under the CGL Policy by one or more of the following exclusions to Coverage A:

This insurance does not apply to

**b. Contractual Liability**

"Bodily Injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement….

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it;

**l. Damage to Your Work**

"Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"….

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms…

30. The CGL Policy contains the following language::

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

    **1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies…..

31. No damages are sought from Uniguest for any "personal and advertising injury."

32. The Excess Policy provides insurance excess of proper exhaustion contains the following language:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY and PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies….

\* \* \*

33. The Excess Policy contains definitions and exclusions substantially similar to those set forth above with respect to the CGL Policy.

34. Uniguest nonetheless claims that it is entitled to insurance coverage under the Travelers CGL and Excess Policies with respect to some or all of the Client Claims. Uniguest

## CAUSE OF ACTION

35. Travelers incorporates by references the averments it makes hereinabove.

36. A controversy exists between Travelers and Uniguest regarding their respective rights and obligations under the CGL and Excess Policies.

37. The CGL and Excess Policies do not cover the Client Claims.

38. Travelers has no obligation to Uniguest under the CGL and/or the Excess Policies with respect to the Client Claims.

8

39. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights and obligations existing between the parties under the CGL and Excess Policies.

WHEREFORE, Travelers respectfully requests that the Court enter judgment as follows:

   a. Declare that there is no coverage under the CGL Policy ;

   b. Declare that there is no coverage under the Excess Policy;

   c. Declare that Travelers owes no obligation to Uniguest with respect to the Client Claims;

   d. Award such other and further relief to Travelers as the Court deems just and proper under the circumstances.

Respectfully submitted,

**SPICER RUDSTROM, PLLC**

/s/ Marc O. Dedman
Marc O. Dedman, BPR #14044
Brent S. Usery, BPR #25737
414 Union Street
Bank of America Plaza, Ste. 1700
Nashville, TN 37219
Phone: 615.259.9080
Fax: 615.259.1522
mod@spicerfirm.com
bsu@spicerfirm.com

*Attorneys for Plaintiff Traveler Property Casualty Company of America*